UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH JOHNSON, JR., | No. C 05-1628 SI (pr) |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| EDWARD C. FLORES, etc., et al., | |
| Defendants. | |

## INTRODUCTION

In this action, Joseph Johnson, Jr., complains of conditions he experienced at the Santa Clara County Jail in 2002-2005 where he was detained pending civil commitment proceedings as a sexually violent predator and complains of problems in the commitment proceedings. For the reasons discussed below, defendants' motion for summary judgment will be granted. Judgment will be entered in defendants' favor.

## BACKGROUND

The acts and omissions that gave rise to this action took place while Johnson was in the Santa Clara County Jail awaiting civil commitment proceedings under California's Sexually Violent Predator Act ("SVPA"), see Cal. Welf. & Inst. Code § 6600 et seq. Johnson's 63-page first amended complaint named numerous defendants and complained of a wide range of problems in the conditions of confinement as well as the commitment proceedings. He currently is in custody at the state hospital in Coalinga following his commitment under the

1  SVPA. The following facts are undisputed unless otherwise noted.

3  A.      Commitment Proceedings

Johnson was committed under the SVPA for a 2-year term from May 23, 2000 - May 23, 2002. First Amended Complaint ("FAC"), p. 8. The district attorney filed a petition to extend his commitment in April 2002. Johnson was transferred to the Santa Clara County Jail in May 2002 in connection with those proceedings. Id. Eventually, petitions for civil commitments for the 2-year term 2002-2004 and for the 2-year term 2004-2006 were assigned to Santa Clara County Superior Court Judge Bernal.

While the civil commitment petitions were pending in superior court, Johnson filed a petition for a writ in the California Court of Appeal to challenge the civil commitment proceedings. On May 19, 2004, the California Court of Appeal issued an order setting a briefing schedule on Johnson's writ petition and staying all proceedings in the Santa Clara County Superior Court until further order of the California Court of Appeal. See FAC, p. 16, and Exh. B. On May 21, 2004, district attorney Randy Hey and Johnson's attorney informed Judge Bernal of the California Court of Appeal's order for a stay "and the need to postpone any further hearings in this case." FAC, p. 16.

"On May 21, 2004, Judge Bernal issued an order to transport Mr. Johnson to Atascadero State Mental Hospital." Id. The decision was made after an ex parte proceeding at which neither Johnson nor his attorney was present but district attorney Hey was. There was not a probable cause determination that permitted transfer to Atascadero under Welfare & Institutions Code § 6602.5. FAC, p. 22-23. Johnson was transported from the county jail to Atascadero State Hospital on June 22, 2004. FAC, p. 22. Johnson's attorney tried to protest, but Judge Bernal refused to hold a hearing because of the stay imposed by the California Court of Appeal. Id. at 22-23.

Johnson contends that the decision to transfer him to Atascadero was pursuant to a conspiracy between Judge Bernal and district attorney Hey. See FAC, p. 27. Judge Bernal was dismissed from this action long ago because he had absolute judicial immunity for the acts

1  alleged in the first amended complaint. See Aug. 6, 2007 Order Dismissing Defendant Bernal
2  And For Status Reports. The court also dismissed Judge Fernandez from the action pursuant to
3  Johnson's request. See Apr. 4, 2007 Order, p. 1. The due process and conspiracy claims against
4  district attorney Hey remain for adjudication. See FAC, pp. 53-56.

6  B.    Conditions of Confinement Claims
7     1.    Bunk Bed Claim Litigated In State Court.
8  At one point in his stay at the Santa Clara County Jail, Johnson was assigned to the top
9  bed in a bunk bed. No ladder was provided for him to get in and out of the top bunk. One day,
10 as he was exiting the top bunk and using a nearby table as a step, he slipped and fell. FAC, pp.
11 11-12. The fall caused him to hurt his back and hip. He claims that the county is liable for the
12 "dangerous condition" of a bunk bed without a ladder. Id. at 13, 59-60.
13 Johnson filed a civil action in the Santa Clara County Superior Court based on the facts
14 in the preceding paragraph. See Def. Exh. A (Complaint in Johnson v. Santa Clara County,
15 Santa Clara County Superior Court No. CV817255, filed May 22, 2003.) In state court, he sued
16 Santa Clara County, James Babcock (the then-chief of the Santa Clara County Department of
17 Corrections), and sergeant Conner. In his state court complaint, Johnson alleged he suffered a
18 personal injury when he fell while exiting the top bunk bed on August 15, 2002. He claimed that
19 defendants had intentionally and negligently caused this by, inter alia, allowing the dangerous
20 condition of a bunk bed without a ladder to exist. See id. The top bunk was 4-1/2 to 5 feet off
21 the ground, according to Johnson's declaration. See Def. Exh. A at Exh. C.
22 The defendants in state court demurred to the complaint and argued, among other things,
23 that it failed to state facts sufficient to constitute a cause of action for negligence or an
24 intentional tort. Def. Exh. B. Johnson failed to oppose the demurrer, and the court sustained the
25 demurrer for that reason. Def. Exh. C. The court gave Johnson 30 days' leave to amend. Id.
26 When Johnson failed to amend his complaint after the demurrer was sustained, the court
27 dismissed the action. Def. Exhs. D-E.

### 2. Conditions Claims Litigated Earlier In Federal Court

In 2002, Johnson filed a civil rights complaint complaining about the policies and practices that resulted in unconstitutional conditions of confinement in Santa Clara County Jail during his stay while awaiting civil commitment proceedings, Johnson v. Santa Clara County, No. C 02-3279 SI ("the 2002 action"). In the 2002 action, the court dismissed the complaint with leave to amend, and Johnson filed an amended complaint on January 15, 2003. After reviewing the amended complaint, the court dismissed the action because Johnson failed to state a claim under § 1983 or the ADA. Def. Exh. F, Sept. 8, 2003 Order of Dismissal, p. 7. Having determined that no federal claim was stated, the court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice to Johnson pursuing them in state court. Id. Johnson did not appeal from the Order of Dismissal and Judgment.

The claims alleged in the amended complaint in the 2002 action pertained to the policies and practices in place while Johnson was at the county jail from May 14, 2002 (when he was moved to the county jail) through January 14, 2003 (the date of filing of the amended complaint). Def. Exh. G, pp. 5, 10. Johnson complained that he was strip-searched and booked upon arrival at the jail in May 2002, id. at 8; that he was housed in a jail with people under criminal process, id. at 9; that he was subjected to numerous strip searches and property searches, id. at 9, 10; that he was confined in a cell for 23-24 hours a day; that he was denied services (i.e., religious services, and recreational, educational, vocational and treatment programming), id. at 10; that he was confined under conditions much more restrictive than those for persons in jail under criminal process, id.; that he was shackled when moved in and out of court, id. at 11; that he was not treated the same as other similarly situated civilly detained persons, id. at 11-12; and that he was subjected to discrimination due to his SVP/mental status in violation of the ADA, id. The amended complaint named as defendants the Santa Clara County Board of Supervisors, James Babcock (the then-chief of corrections of Santa Clara County), Dennis Handis (also alleged to be the then-chief of corrections in Santa Clara County), David Gottlieb (who was the commander of the county jail), lieutenant Sepulveda (who was

4

employed at the jail), and sergeant Nugo (who was employed at the county jail).

### 3. Other Conditions[1]
#### a. MRI

In his first amended complaint, Johnson alleges that he eventually saw a doctor for the injuries suffered when he fell from the bunk bed. The doctor ordered that he continue taking ibuprofen on an as-needed basis and that he use a lower bunk. FAC, p. 13. Johnson claims that the doctor also told him that an MRI was necessary but, due to jail policies, he could not have one. Id. at 14. Johnson claims that defendants Santa Clara County and Flores impermissibly overrode doctors' medical judgment by having a policy that did not allow for an MRI. See id.

Santa Clara County Department of Correction Policy No. 12.01 (attached as part of Opposition Exh. F) describes the policies and procedures for medical care. There is no statement in the policy that MRIs will not be provided to inmates or detainees. The policy states that when medical care services are requested by an inmate, "medical staff shall provide appropriate triage and treatment by qualified health personnel" and that "[i]nmates requiring inpatient medical services or health care services beyond those available in the facility shall be transferred under appropriate security provisions to Santa Clara Valley Medical Center." Policy No. 12.01, § IV.

---

[1] The claims the court will consider are those alleged in the first amended complaint. The court denied Johnson's motion to amend and supplement the first amended complaint. See Oct. 22, 2008 Order Denying Motion To Amend; Scheduling Dispositive Motions And Discovery Cut-Off. In that order, the court explained that the scope of this action was limited to acts and omissions that occurred before Johnson's transfer from the jail in April 2005 and that the scope of the action was defined by the first amended complaint. In his opposition to the motion for summary judgment, Johnson tries to subvert that order by adding new claims and legal theories that are beyond the allegations of the first amended complaint. Not only does the opposition ignore the court's order limiting the scope of this action, the 56-page opposition also disregards the court's earlier instructions regarding page limits on legal memoranda. See April 4, 2007 Order, p. 1 (striking 53-page opposition to motion to dismiss because it exceeded 25-page limit and did not have a table of contents and table of authorities).

        b.      ADA Request

Johnson contends that his April 15, 2003 request for an ADA accommodation was improperly denied. He alleges that Santa Clara County regarded him as suffering an antisocial personality disorder, paraphilia not otherwise specified, and substance abuse. FAC, p. 10. Johnson states that he submitted an ADA request for accommodation on April 15, 2003 asking for these accommodations: less restrictive housing than that imposed on persons under criminal process, two hours of outdoor recreation per week, therapeutic counseling and/or treatment related to the reason for his detention, and "radios and/or CD, tape players for educational, therapeutic programming, religious programming, as part of the therapeutic treatment." Id. at 10-11. His request was denied by officer Conner with a statement that "medical and custody issues [are] not covered by the ADA." Id.

A 90-day treatment plan dated February 6, 2002 from the state hospital submitted by Johnson appears to show that Johnson refused to participate in programming at the state hospital. Opposition, Exh. R. Specifically, the 90-day treatment plan states that Johnson was not taking any psychiatric medications, refused to participate in a substance abuse prevention skills program, declined to participate in the sex offender commitment program, and declined to attend "Phase I" programming. Id.

Santa Clara County Department of Correction Policy No. 12.01 (attached as part of Opposition Exh. F) describes the procedure for accommodating inmates with disabilities. The policy states that requests for disability accommodation shall be forwarded to medical staff for review, and that medical staff will verify the existence of a disability and provide custodial and classification staff with housing recommendations.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Santa Clara County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, when a party challenges the merits of the opponent's claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). The first amended complaint is considered in deciding the summary judgment motion because it was made under penalty of perjury.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. T.W.

Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

**DISCUSSION**

A.   Commitment Proceedings - The Claim Against The District Attorney

Johnson alleges that district attorney Randy Hey conspired with Judge Bernal during an ex parte hearing to have Johnson improperly transported to the state mental hospital and caused him to be transported in violation of his Fourteenth Amendment rights. See FAC, pp. 53-58. This allegedly was done while defendant Hey knew that Johnson was a pretrial detainee, knew that there had not been a finding of probable cause under California Welfare & Institutions Code § 6602.5(a) permitting such a transfer, and knew that a stay had been issued by the state appellate court. FAC, pp. 53-54.

District attorney Randy Hey has absolute prosecutorial immunity for the acts alleged in the first amended complaint because they were done as an advocate during the presentation of a civil commitment case in the superior court. See Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993); Imbler v. Pachtman, 424 U.S. 409, 431 (1976). As this court explained when it determined that Judge Bernal had absolute judicial immunity, the transfer order was made in a judicial proceeding over which Judge Bernal was presiding.

> The order was done following a proceeding in the courtroom that was memorialized in the clerk's minutes. FAC, Exh. C. The minutes noted that Johnson and his attorney were not present and that assistant district attorney R. Hey was present. The minutes indicated that the matter was considered in the courtroom with a court reporter and a clerk present. The minutes – done on a form apparently normally used for a criminal proceeding -- had handwritten notes, "DOC to transport defendant to Atascadero forthwith," and "remanded to Atascadero." Id. The "committed" box was not checked at the bottom of the form. The minutes also had a handwritten notation, "off the record, DA advises court that the court of appeals has issued a stay in this matter therefore motion to dismiss cannot be heard." Id. Even though Johnson and his attorney were not present at the proceeding, it was a judicial proceeding. Judge Bernal acted in his judicial capacity when he ordered that Johnson be transferred to Atascadero. [¶] The general act of issuing orders regarding the custody and movement of a custodial litigant – e.g., a defendant in jail awaiting a criminal trial, a person who has been committed to a mental hospital, or a person detained during the pendency of civil commitment proceedings – is squarely within a judge's normal judicial duties.

8

Aug. 6, 2007 Order Dismissing Defendant Bernal And For Status Reports, p. 5. Similarly, advocating a position with regard to that custodial litigant's housing is squarely within the prosecutor's core function as an advocate for the government.

The fact that the alleged violations of Johnson's rights occurred during a civil commitment proceeding rather than a criminal trial does not change the outcome. Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is necessary to assure that the attorney can perform his or her functions without harassment or intimidation. See Fry v. Melaragno, 939 F.2d 832, 837 (9th Cir. 1991). The "'reasons supporting the doctrine of absolute immunity apply with equal force regardless of the nature of the underlying action.'" Id. at 837 (quoting Flood v. Harrington, 532 F.2d 1248, 1251 (9th Cir. 1976)). The touchstone of this immunity is whether the attorney's actions are "intimately" or "closely" associated with the judicial process. See id. Hey's actions of which Johnson complains were intimately associated with the judicial process.

Johnson has not produced a whit of evidence to support his charge of conspiracy, and the undisputed evidence shows only an ex parte court proceeding at which district attorney Hey acted as an advocate/prosecutor. Merely attaching the label of conspiracy to defendant Hey's action does not help Johnson. See Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986) (alleged conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding did not pierce the immunity extended to judges and prosecutors). Johnson's unsupported allegation of a conspiracy appears to be nothing more than a "'defendant transform[ing] his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate,'" Van de Kamp v. Goldstein, 129 S. Ct. 855, 860 (2009) (quoting Imbler, 424 U.S. at 425), which the doctrine of prosecutorial immunity shields the prosecutor from so that he may act on the government's behalf without being chilled by worries about being sued. Defendant Hey is entitled to judgment as a matter of law on the claims against him.

B.      Conditions Of Confinement Claims

9

### 1. Johnson Cannot Relitigate The Bunk Bed Claim

The related doctrines of res judicata and collateral estoppel limit litigants' ability to relitigate matters. Under the doctrine of res judicata (also known as the claim preclusion doctrine), "a final judgment on the merits of an action preludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel [also known as the issue preclusion doctrine], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980).

Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). A civil rights claim brought under 42 U.S.C. § 1983 in federal court is subject to principles of issue and claim preclusion by a prior state court judgment. See Allen, 449 U.S. at 97-98 (issue preclusive effect in federal court of state proceedings is same as that accorded in state's own courts); Migra, 465 U.S. at 84 (extending rule of Allen to cover claim preclusion as well as issue preclusion). A civil rights action under § 1983 thus may be dismissed as barred by res judicata, for example, if a prior California state court judgment rendered a valid judgment on the merits in favor of a defendant. See Takahashi v. Bd. of Trustees, 783 F.2d 848, 850-51 (9th Cir. 1986) (citing Slater v. Blackwood, 15 Cal.3d 791, 795 (1976)); see also Silverton v. Dep't of Treasury, 644 F.2d 1341, 1347 (9th Cir. 1981) (state habeas proceeding precludes identical issue from being relitigated in subsequent § 1983 action if state habeas court afforded full and fair opportunity for issue to be heard).

The state court records submitted by defendants show that the claim regarding the fall from the bunk bed repeats that which has already been litigated in the Santa Clara County Superior Court. The § 1983 claim for the fall from the bunk bed is based on the violation of the same primary rights as the claims in Johnson's state tort action. See Takahashi, 783 F.2d at 851. The bunk bed claim was actually and necessarily decided in the state court action. Johnson

alleged in his state law action that there was negligent and intentionally tortious conduct by jail staff in not providing a ladder for him to enter and exit his top bunk, and that he slipped and fell as he tried to get down from the top bunk by stepping on a table on August 15, 2002. See Def. Exh. A. This is the same factual basis for his bunk bed claim in the present action. See FAC, pp. 11-13, 59-60.

The claim was decided against Johnson on the merits in state court. Defendants demurred in state court and argued that, among other things, the complaint failed to state facts sufficient to constitute causes of action for negligence and intentional tort. Def. Exh. B. Johnson failed to oppose the demurrer, and the court granted it for that reason. Def. Exh. C. The court gave Johnson leave to amend, and when he failed to amend after the demurrer was granted, the court dismissed the action. Def. Exhs. D-E. The state court's decision is a decision on the merits that is entitled to preclusive effect.

The Santa Clara County Superior Court's dismissal of the action for failure to state facts sufficient to constitute a cause of action for negligence or intentional tort was final and on the merits and thus is entitled to full preclusive effect. The doctrine of res judicata precludes Johnson from asserting his bunk bed claim, even on the new legal theory of a constitutional tort instead of a state law tort. Defendants' motion for summary judgment is granted on the ground that the § 1983 bunk bed claim is barred by the doctrine of res judicata.

2.    Johnson Cannot Relitigate The Claims Asserted In the 2002 Action

The dismissal of the 2002 action for failure to state a claim under § 1983 and the ADA was a decision on the merits. Fed. R. Civ. P. 41(b). The doctrine of res judicata precludes Johnson from relitigating the claims asserted in the 2002 action. See Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398-99 (1981). Johnson was not free to choose not to appeal the dismissal and refile the same claims three years later. Although the law in the Ninth Circuit is now more favorable to SVPs awaiting civil commitment than it was in 2003, see Hydrick v. Hunter, 500 F.3d 978 (9th Cir. 2007); Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004), the changes

11

1  in the law do not allow Johnson to file a new action to relitigate claims he already litigated and
2  lost. The res judicata consequences of the unappealed judgment in the 2002 action are not
3  "altered by the fact that the judgment may have been wrong or rested on a legal principle
4  subsequently overruled in another case." Federated Dept. Stores, 452 U.S. at 398.

5        The doctrine of res judicata requires that judgment be entered against plaintiff on all the
6  claims in the current action that were asserted in the amended complaint in the 2002 action.
7  Defendants are entitled to judgment as a matter of law on the following § 1983 claims based on
8  policies and practices at the county jail that resulted in the following allegedly unconstitutional
9  conditions: the strip searches; the property searches; the housing of Johnson in a county jail with
10 people under criminal process; the confinement of Johnson under conditions more restrictive
11 than those imposed on persons in jail awaiting trial or serving sentences; the confinement of
12 Johnson in a cell for 23-24 hours a day; the denial of religious services, and recreational,
13 educational, vocational and treatment programming; the shackling of Johnson during
14 movements; and the failure to treat SVPs the same as other similarly situated civilly detained
15 persons. Defendants also are entitled to judgment as a matter of law on the claim that his rights
16 under the ADA were violated because Johnson was subjected to discrimination and not given
17 accommodations for his SVP/mental status.

18       Although the some of the activity of which Johnson complains in this action occurred
19 after the filing (on January 15, 2003) of the amended complaint in the 2002 action, Johnson's
20 amended complaint in that action was directed to challenging the policies at the jail, and these
21 policies existed within the time frame covered in the 2002 action. His first amended complaint
22 here also concerns policies and not disregard of policies by rogue members of the jail staff. For
23 example, he complains in this action about the strip searches and being housed with people under
24 criminal process, but his allegations are cast in terms of the searches and housing done pursuant
25 to a *policy* – the same policy as existed in the 2002 action. Because the policies challenged in
26 this action are the same policies challenged in the 2002 action, Johnson is precluded from
27 relitigating them. Upon examination of the first amended complaint, it appears that there are two
28

12

claims that are not essentially efforts to relitigate policies challenged in the 2002 action: a medical care policy claim and a claim regarding an ADA request. Those two claims are discussed next.

### 3. MRI Claim

Johnson contends that defendant Flores (i.e., the chief of the Santa Clara County Department of Corrections) and the County are liable for having a policy not to give civil and inmate detainees use of an MRI. FAC, p. 59. Johnson contends that a doctor thought an MRI was necessary for his injuries resulting form his fall from the bunk bed, but that there was a policy against MRIs for inmates.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, see Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978); however, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, see Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

Defendants are entitled to judgment as a matter of law on the Monell claim because Johnson has not provided any admissible evidence that a no-MRI policy exists. His only evidence is the inadmissible hearsay statement that a doctor told him he needed an MRI but there was a policy against it. Even if the hearsay problem could be overcome, no reasonable juror could find in Johnson's favor on this claim on the evidence now before the court. Johnson's statement is completely lacking in detail (i.e., an unidentified doctor told him on an unidentified

date that he needed an MRI) and lacking in record support.  The medical records he did submit in his state court action are the x-ray reports, and they do not appear to show any serious injury to him.  See Def. Exh. A at Exh. B (findings on October 3, 2002 spine x-ray were: "The vertebral bodies appear well-aligned.  There is mild disc space narrowing at L2/3 with irregularity of the superior end-plate of L3, which may represent an old fracture.  No acute fractures are identified. The SI joints appear intact.  The pedicles are intact."); id. (findings on September 11, 2002 pelvis x-ray were: "I do not see a fracture.  The hip joints are clear.  Sacroiliacs are normal.") Most importantly, not only has Johnson not shown the existence of a policy against allowing MRIs, the policy he did attach to his opposition indicates that such tests would be available.  Santa Clara County Department of Correction Policy No. 12.01 (attached as part of Opposition Exh. F) provided that qualified health personnel would provide appropriate treatment for inmates needing medical care and that "[i]nmates requiring inpatient medical services or health care services beyond those available in the facility shall be transferred under appropriate security provisions to Santa Clara Valley Medical Center."  Policy No. 12.01, § IV.(B and D). Defendants are entitled to judgment as a matter of law on Johnson's claim that they violated his right to due process by having a policy prohibiting MRIs for detainees.

### 4. ADA Request in April 2003

Johnson claims his request for an ADA accommodation was improperly denied.  He alleges that Santa Clara County regarded him as suffering an antisocial personality disorder, paraphilia not otherwise specified, and substance abuse.  FAC, p. 10. Johnson states that he submitted an ADA request for accommodation on April 15, 2003 asking for accommodations in the nature of a less restrictive housing than imposed on persons under criminal process, two hours of outdoor recreation per week, therapeutic counseling and/or treatment related to the reason for his detention, and "radios and/or CD, tape players for educational, therapeutic programming, religious programming, as part of the therapeutic treatment."  Id. at 10-11.  His request was denied by officer Conner with a statement that "medical and custody issues not

covered by the ADA."  The exhibit that purported to show this, Johnson Decl., Exh. R, is not a request for accommodation but instead is a 90-day treatment plan dated February 6, 2002 that appears to show that he refused to participate in programming at the state hospital.  Specifically, the 90-day treatment plan states that Johnson was not taking any psychiatric medications, refused to participate in a substance abuse prevention skills program, declined to participate in the sex offender commitment program, and declined to attend "Phase I" programming.  Id.

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 et seq. (ADA), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). Although § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).  The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. Weinreich v. Los Angeles County MTA, 114 F.3d 976, 979 (9th Cir. 1997).  A plaintiff accordingly bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide. See id. at 978.

15

Defendants contend that they are entitled to judgment as a matter of law because Johnson has failed to demonstrate that he is a "qualified individual with a disability" within the meaning of the ADA. In the context of the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of the person; (B) having a record of such an impairment; or (C) being regarded as having such an impairment." Id. § 12102(2). People who pose a significant risk to the health or safety of others that cannot be ameliorated by means of a reasonable modification are not "qualified individuals" covered by Title II. See Bay Area Addiction Research and Treatment, Inc. v. City of Antioch, 179 F.3d 725, 735 (9th Cir. 1999). Further, the alleged "disability" Johnson identifies apparently is his DSM-IV diagnosis, at least the first two of which – i.e., the antisocial personality disorder and paraphilia not otherwise specified – are directly connected to his sexually violent predator status. Engaging in sexually violent criminal behavior is not a major life activity, and a mental disorder that impedes refraining therefrom does not substantially limit one or more of the major life activities of the person. On this, Johnson has not raised a triable issue of fact that he is a qualified individual with a disability under the ADA.

Even if Johnson's third alleged disability, i.e., substance abuse, is a qualifying disability under the ADA, Johnson's claim would fail on the third and fourth elements of an ADA claim. That is, Johnson has not raised a triable issue of fact that he was excluded from participation in or denied the benefits of the county's services, programs or activities or otherwise was discriminated against by the county by reason of that alleged disability. Summary judgment will be entered against Johnson on the claim that his rights under the ADA were violated when his April 15, 2003 request for accommodation was denied.

Defendants also contend that Johnson has the wrong defendant in that he only named officer Conner as a defendant on his ADA claim. Conner was sued in her individual and official capacities. See FAC, p. 4. Defendants are correct that Conner has no liability in her individual capacity for the alleged ADA violation, see Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), but there might be liability based on the fact that she is sued in her official capacity.

Although it is questionable whether naming a low level correctional officer (who apparently is not even in charge of ADA issues) in her "official capacity" is sufficient to be considered a suit against the entity of which that officer is an agent, see Kentucky v. Graham, 473 U.S. 159, 165 (1985), the court need not decide this issue because there is no ADA liability for any defendant for the reasons stated in the preceding paragraph.

**CONCLUSION**

For the foregoing reasons, defendants are entitled to judgment as a matter of law on plaintiffs' first amended complaint. Defendants' motion for summary judgment is GRANTED. (Docket # 58.) Judgment will be entered in favor of defendants and against plaintiff. The clerk shall close the file.

IT IS SO ORDERED.

Dated: March 9, 2009

_____
SUSAN ILLSTON
United States District Judge

17